

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| DAVID VOROS and ALEXANDRA STASKO, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:22-01265-MGL |
| THE MCCLATCHY COMPANY, LLC, *d/b/a* *The State*, and LUCAS DAPRILE, | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiffs David Voros (Voros) and Alexandra Stasko (Stasko) (collectively, Plaintiffs) filed this defamation lawsuit in the Richland County Court of Common Pleas against Defendants The McClatchy Company, LLC, d/b/a The State (The State), and Lucas Daprile (Daprile) (collectively, Defendants).

Daprile "is a news reporter and at all times material to this case, an employee of The State." Plaintiffs' Amended Complaint ¶ 3.  Plaintiffs seek actual, consequential, and punitive damages.

The State removed the matter to this Court before Daprile had been served.  The Court has diversity jurisdiction over the matter in accordance with 28 U.S.C. § 1332.

Pending before the Court is Defendants' motion for summary judgment.  Having carefully considered the motion, the response, the replies, Plaintiffs' supplement, Defendants' objections, the

record, and the applicable law, it is the judgment of this Court Defendants' motion for summary judgment will be granted.

II.     **FACTUAL AND PROCEDURAL HISTORY**

When Plaintiffs filed this lawsuit, "Voros [was] a Professor of Studio Art at the University of South Carolina [(USC)] School of Visual Art and Design. . . . He is also an owner of the International Center for the Arts, located in Monte Castello, Italy, a business that hosts retreats and events promoting the study of the arts and humanities in an historic Italian setting." Plaintiffs' Amended Complaint ¶ 5.

"Stasko was formerly an instructor at [USC] teaching Figure Structure and Ceramic classes. She is formerly a master's student at [USC]." *Id*. ¶ 6.

Plaintiffs allege, "[l]eading up to December 2, 2020, Defendants published a series of stories and hosted several online events relating to claims of harassment made by several individuals against . . . Voros, which also had serious negative implications and insinuations relating to . . . Stasko." *Id*. ¶ 7.

"In a December 2, 2020[,] article entitled 'USC protected professor repeatedly accused of sexual harassment, lawsuit alleges' the Article . . . states . . . USC 'failed to protect students and faculty from a professor repeatedly accused of sexual misconduct, two new lawsuits allege.'" *Id*. ¶ 8.

"This article goes on to state . . . Voros was previously sued by 'a former student alleging he made unwanted sexual advances on her.'" *Id*. ¶ 9. According to Plaintiffs, "[t]his reporting was and is a complete misrepresentation of the prior allegations made by Allison Dunavant [(Dunavant)], and

2

importantly . . . Dunavant had previously recanted many of these allegations in sworn deposition testimony taken in April of 2019." *Id.* ¶ 10.

Plaintiffs maintain "[t]his information being readily available to The State, had a thorough, complete and fair investigation . . . been conducted, and upon information and belief, . . . Defendants knew or should have known of this sworn deposition testimony at the time of this publication." *Id.* ¶ 11. Plaintiffs also contend "on March 12, 2021, . . . Daprile publicly states, 'I have read the legal documents in the Dunavant case,' on his Twitter account." *Id.* ¶ 12.

Plaintiffs say "[t]his article also states . . . both the new lawsuits accuse Voros of sexually harassing them, was and remains patently false, as the allegations made by Jamie Misenhiemer [(Misenhiemer)] do not support this statement." *Id.* ¶ 13.

Plaintiffs maintain "[t]he article also states that a 'student's complaint, described in [Misenhiemer's] lawsuit alleges . . . Voros traded employment benefits to female faculty and or graduate students for sexual favors.'" *Id.* ¶ 14. According to Plaintiffs, "[i]t was well known by the USC community . . . these statements were directed at . . . Stasko." *Id.*

Plaintiffs further contend, "in a March 12, 2021[,] article titled, 'Women claim USC mishandled their sexual harassment claims,' . . . Daprile linked a document of excerpts of Lauren Chapman's deposition, a close friend of . . . Misenhiemer and individual deposed in . . . Dunavant's lawsuit, and not her full deposition." *Id.* ¶ 18 (emphasis omitted). Plaintiffs state "[t]hese excerpts were a one-sided representation of Lauren Chapman's full deposition." *Id.*

In the March 12, 2021, article, Defendants also write: "Dunavant . . . alleged Voros subjected her to sexual advances and required her to do manual labor during a study abroad trip to Italy. . . . Dunavant settled the suit in federal court for $75,000 in late 2019, according to documents and an interview with Dunavant." Defendants' Motion for Summary Judgment, Exhibit B at 10-11.

According to Plaintiffs, they "have made demand for retraction of these false and defamatory statements made by Defendants and Defendants have refused to respond to Plaintiffs' demand for retraction." Amended Complaint ¶ 19.

After Defendants removed Plaintiffs' lawsuit to this Court, they filed a motion for summary judgment, Plaintiffs filed a response in opposition, and Defendants filed a reply in support. Plaintiffs later filed a supplement to their response, and Defendants filed an objection to the supplement, to which Plaintiffs filed a reply.

The Court, now having been fully briefed on the relevant issues, will adjudicate Defendants' motion.

### III.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing . . . there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse

4

party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23. Hence, the granting of summary judgment involves a three-tier analysis.

First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a substantive disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251–52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

## IV.  DISCUSSION AND ANALYSIS

### A.  *Applicable Law*

#### 1.  *Defamation*

"The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff." *Parrish v. Allison*, 656 S.E.2d 382, 388 (S.C. Ct. App. 2007). "Defamatory communications take two forms: libel and slander.  Libel is the publication of defamatory material by written or printed words, by its embodiment in physical form or by any other form of communication that has the potentially harmful qualities characteristic of written or printed word.  Slander is a spoken defamation." *Id*.

"The elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Murray v. Holnam, Inc*., 542 S.E.2d 743, 748 (S.C. Ct. App. 2001). "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id*.

#### 2.  *Qualified Privilege*

Concerning the second element of a defamation claim, the "unprivileged publication to a third party[ ]" element, *id*., "the defendant may assert the affirmative defense of conditional or qualified privilege.  Under this defense, one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused." *Swinton Creek Nursery*, 514 S.E.2d at 134.  But, "[t]he privilege extends only to a report of the contents of the public record and any

6

matter added to the report by the publisher, which is defamatory of the person named in the public records, is not privileged." *Jones v. Garner*, 158 S.E.2d 909, 913 (S.C. 1968).

Underlying the qualified privilege doctrine is the recognition "[c]ourt proceedings are public events and the public has a legitimate interest in knowing the facts in them. Traditionally court records have been public records, generally open for public inspection. Fair reports of what is shown on public records may be circulated freely and without liability." *Padgett v. Sun News*, 292 S.E.2d 30, 33 (S.C. 1982) (citation omitted) (internal quotation marks omitted).

In other words, "[p]rivilege in reporting a judicial record is not measured by the legal sufficiency of the charges made in the judicial proceedings or the truth of those charges. The privilege consists of making a fair and substantially true account of the particular proceeding or record." *Id*. (citation omitted) (internal quotation marks omitted).

### 3.     *Malice*

As to the third element of a defamation claim, the "fault on the part of the publisher[,]" *Murray*, 542 S.E.2d at 748, "[i]f a communication is libelous, then the law presumes the defendant acted with common law malice[.]" *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 134 (S.C. 1999). But,"[w]here the occasion gives rise to a qualified privilege, there is a prima facie presumption to rebut the inference of malice, and the burden is on the plaintiff to show actual malice or that the scope of the privilege has been exceeded." *Id*.

"To prove actual malice, the plaintiff must show . . . the defendant was activated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the statements were published with such recklessness as to show a conscious disregard for plaintiffs rights." *Id*.

### B.     *Whether there is a genuine issue of materials fact as to Defendants' affirmative defense of qualified privilege as to their December 2, 2020, and March 12, 2021, publications*

According to Defendants, "[t]o withstand [their] motion for summary judgment on defamation[,] [P]laintiffs must demonstrate . . . [D]efendants did not report fairly and substantially accurately information in the public records as those records existed at the time of the news reports." Defendants' Motion for Summary Judgment at 14.  "To meet this burden[,]" Defendants contend, "[P]laintiffs must point to documents in the public record at the time of the news reports which support a conclusion . . . [D]efendants' report was not a fair and substantially accurate summation of the contents of the public record." *Id*.

Plaintiffs, however, state "[a] genuine issue of material fact remains as to whether Defendants have willfully disregarded material exculpatory information in its reporting of recanted allegations of sexual harassment–instead opting to repeat and republish stale, recanted and unsubstantiated allegations in five separate publications over a two-and-one-half year period." Plaintiffs' Response at 14.

Concerning Plaintiffs' reference to the "five separate publications[,]" *id*., the Court acknowledges Plaintiffs allege in the complaint that, "[l]eading up to December 2, 2020, Defendants published a series of stories and hosted several online events relating to claims of harassment made by several individuals against . . . Voros, which also had serious negative implications and insinuations relating to . . . Stasko." Plaintiffs' Amended Complaint ¶ 7.

But, Plaintiffs' amended complaint specifically references only the December 2, 2020 and March 12, 2021, news reports; and a plaintiff is disallowed to raise a new claim in response to a summary judgment motion.  *See Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir.2004) (holding a plaintiff could not raise a new claim in response to a summary judgment motion).  To the extent Plaintiffs seeks to constructively amend their complaint, the request is denied.

Additionally, Plaintiffs fail to say which other articles, previous to the December 2, 2020, news report, they are referring to; nor do they attempt to develop this argument. Thus, the Court also considers any argument concerning articles other than the December 2, 2020 and March 12, 2021, ones as being waived. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n. * (4th Cir. 2014) ("We deem this perfunctory and undeveloped claim .").

As the Court will explain below, Defendants have the better argument as to whether there is a genuine issue of material fact as to the proper application of their qualified privilege defense to the facts of this case.

### 1. *Whether Dunavant's alleged recantation of some of her allegations is sufficient to overcome Defendants' qualified privilege argument*

Defendants argue "[P]laintiffs have failed to demonstrate . . . a news report based on allegations in a suit between Dunavant and Voros was inaccurate based on their assertion . . . Dunavant had 'recanted' her allegations of sexual harassment against Voros in a deposition predating the filing of the Second Amended Complaint." Defendants Reply at 2.

Plaintiffs, however, make much of their contention Dunavant recanted several of the allegations in her complaint against Voros during her April 8, 2019, deposition testimony. According to Voros, this deposition testimony was available to Defendants and they should have made it known to their readers.

Plaintiffs contend Dunavant recanted the following three allegations they say are contained in her initial complaint against Voros:

1.  "While at Voros' house for a meal, [Dunavant] walked in on Voros and [Stasko] engaging in sexual acts." Plaintiff's Response at 1 (citation omitted).

2. "Voros implied he wanted to engage in sexual acts with her as well." *Id.* (citation omitted).

3. "Voros would place his hands on [Dunavant's] face and legs sexually[.]" *Id.* (citation omitted).

The Court has carefully read the December 2, 2020, and March 12, 2021, articles and notes they fail to specifically mention any of these allegations Dunavant supposedly later disavowed.

In Dunavant's second amended complaint against Voros, which she filed on August 28, 2019, she made the following five allegations of Voros's unwanted sexual advances, which are relevant to the Court's consideration of the parties' arguments here:

1. Dunavant "believed . . . the request for her to act more like [Stasko] was a request for [her] to engage in sexual acts with . . . Voros." Dunavant's Second Amended Complaint ¶ 37.

2. "Voros would host dinners late into the night at his personal residence in which he would serve wine to all the students. During these dinners, . . . Voros placed his hands on [Dunavant's] face in a manner that was unwanted and made [her] uncomfortable." *Id.* ¶ 38.

3. "During dinner, Voros had also placed his hand on [Dunavant's] leg. This touching was also unwanted and made [her] uncomfortable." *Id.* ¶ 39.

4. "Voros . . . inflicted unwelcomed sexual contact on [Dunavant]." *Id.* ¶ 151.

5. USC "was grossly negligent in supervising Voros, allowing him to intentionally harm [Dunavant] through sexual harassment and creating a hostile environment in which no reasonable individual could feel safe while acting as an agent of . . . USC where Voros was an employee." *Id.* ¶ 191.

So, Dunavant made these allegations of Voros's unwanted sexual advances and other misbehavior in her August 28, 2019, second amended complaint. This was over four months after she purportedly reneged on some of her earlier allegations of Voros's misconduct in her April 8, 2019, deposition, but well before Defendants published their December 2, 2020 and March 12, 2021, news stories.

Thus, given Dunavant's allegations of Voros's unwanted sexual advances in her second amended complaint, whether she recanted her original allegations of Voros's misconduct, is immaterial. This is so because, even after Dunavant's purported retraction of her earlier allegations of Voros's unwanted sexual advances, she made additional allegations of Voros's unwanted sexual advances later, which were a part of the Court's records and, therefore, available for Defendants to see and to report on in their December 2, 2020 and March 12, 2021, new articles.

As such, Plaintiffs are unable to credibly argue either Defendants unfairly reported Dunavant's claims against him or he was harmed by Defendants' failure to report on Dunavant's supposed repudiation of her earlier allegations in her initial complaint. Consequently, Plaintiffs are unable to pierce Defendants' qualified privilege defense with its recantation argument.

>       2.      ***Whether any of Defendants' reports fall outside the reporting of judicial proceedings.***

Plaintiffs contend, "because much of the content of the articles arise outside the report of judicial proceedings (i.e. Defendants' interviews and internal record review), the privilege is wholly inapplicable to those publications." Plaintiffs' Response at 11. But, like the "other articles" argument the Court discussed above, Plaintiffs fail to develop this argument. The Court, thus, deems it as being waived. *See Russell*, 763 F.3d at 396 n. * ("We deem this perfunctory and undeveloped claim waived.").

>       3.      ***Whether Defendants' failure to retract either of the news reports establish malice***

11

Plaintiffs maintain they "wrote Defendants in January of 2022 demanding a retraction of these defamatory publications, and . . . Defendants did not provide any response, nor did they make any retractions of the inaccurate publications." Plaintiffs' Response at 13. Defendants fail to address this argument.

"Refusal to retract an exposed error tends to support a finding of actual malice." *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 ( 1987) (cited wit approval in *Anderson v. The Augusta Chronicle*, 585 S.E.2d 506, 520 (S.C. Ct. App.2003). But, the Court is unpersuaded Defendants were required to retract their stories about the allegations of Voros's sexual misconduct. They were merely reporting what was contained in the Court records. And, as the Court noted earlier, "court records have been public records, generally open for public inspection. Fair reports of what is shown on public records may be circulated freely and without liability." *Padgett*, 292 S.E.2d at 33 (citation omitted) (internal quotation marks omitted).

### 4.     *Whether Defendants' indirect mention of Stasko is privileged*

Defendants maintain "Plaintiffs have offered no evidence . . . they can satisfy the requirement . . . the publications were understood by others to reference Stasko." Defendants' Reply at 3. Plaintiffs contend, however, "[t]he [December 2, 2020] article . . . states . . . a 'student's complaint, described in [Jaimie Misenhiemer's (Misenhiemer)] lawsuit alleges . . . Voros traded employment benefits to female faculty and or graduate students for sexual favors.'" Plaintiffs' Complaint ¶ 14. According to Plaintiffs, "[i]t was well known by the USC community . . . these statements were describing . . . Stasko." Plaintiffs' Response at 4.

But, Defendants' December 2, 2020, article merely parrots Misenhiemer's amended complaint, alleging, "[u]pon information and belief, the student's complaint included that . . . Voros exchanged employment benefits to female faculty and/or graduate students in exchange for sexual favors, and . . . Voros and Stasko were engaging in an inappropriate relationship." Misenhiemer's

12

Amended Complaint ¶ 22. The contents of what is contained in the Court's docket, again, "may be circulated freely and without liability." *Padgett*, 292 S.E.2d at 33 (citation omitted) (internal quotation marks omitted). Hence, whether "[i]t was well known by the USC community . . . these statements were describing . . . Stasko[,]" Plaintiffs' Response at 4, is inconsequential.

> 5.  ***Whether Defendants' statements describing Misenhiemer's complaint are false, and thus fall outside the protection of the qualified privilege doctrine***

The Court would be remiss if it failed to address a couple allegations in Plaintiffs' amended complaint, which the parties have neglected to discuss.

As the Court stated above, Plaintiffs allege the "[March 12, 2021,] article also states . . . both the new lawsuits accuse Voros of sexually harassing them, was and remains patently false, as the allegations made by . . . Misenhiemer do not support this statement." Plaintiffs' Amended Complaint ¶ 13.

What is patently false is this statement by Plaintiffs. The Court, having been assigned the *Misenhiemer* matter, is well aware of the accusations Misenheimer made of Voros sexually harassing her, which are contained in her amended complaint. Here is a partial list of those allegations:

1.  "[USC] was grossly negligent in supervising . . . Voros, allowing him to intentionally harm [Misenhiemer] through sexual harassment and to create a hostile environment in which no reasonable individual could feel safe while acting as an agent of [USC] . . . Voros was an employee." Misenhiemer's Amended Complaint ¶ 91.

2.  "[Misenhiemer] was subjected to unwelcome sexual harassment based on her sex from . . . Voros during her employment with [USC]." *Id.* ¶ 99.

3.  "Such harassment affected tangible aspects of [Misenhiemer's] compensation, terms, conditions, and privileges of employment." *Id.* ¶ 100.

4.  "[USC] knew or should have known of the harassment and took no effective remedial action." *Id.* ¶ 101.

13

5.  "[Misenhiemer] was subjected to unwelcome sexual harassment based on her sex from . . . Voros during her employment with [USC." *Id.* ¶ 121.

6.  "Such harassment affected tangible aspects of Plaintiff's compensation, terms, conditions, and privileges of employment." *Id.* ¶ 122.

7.  "Appropriate persons, including [USC] and its officials, had actual knowledge of the harassment and took no effective remedial action." *Id.* ¶ 123.

8.  "Voros intentionally and improperly interfered with [Misenhiemer's] contractual relations with [USC] and intentionally procured a breach of [her] employment contract with [USC] by [ ] harassing [her] in her workplace[.]" *Id.* ¶ 141.

Accordingly, Plaintiffs' argument that Misenhiemer's lawsuit fails to allege Voros sexually harassed her is a clear example of Plaintiffs' fudging the facts.

### 6. *Whether Defendants' statements describing Dunavant's complaint are false, and thus fall outside the protection of the qualified privilege doctrine*

Equally and manifestly meritless is this false allegation from Plaintiffs' amended complaint: "[The December 2, 2020,] article goes on to state . . . Voros was previously sued by 'a former student alleging he made unwanted sexual advances on her.'" Plaintiffs' Amended Complaint ¶ 9. According to Plaintiffs, "[t]his reporting was and is a complete misrepresentation of the prior allegations made by [Dunavant][.]" *Id.* ¶ 10

The Court also presided over the *Dunavant* case and it also well aware of Dunavant's allegations of Voros's unwanted sexual advances and other misbehavior contained in her August 28, 2019, second amended complaint. The Court listed them above, and will thus refrain from listing them a second time here.

* * * * *

In sum, the Court is unable to say there is a genuine issue of material fact as to the proper application of Defendants' qualified privilege defense to the facts of this case. Simply stated, the

Court is of the firm opinion Defendants made "a fair and substantially true account of the particular . . . record[ ]" in this case. *Padgett*, 292 S.E.2d at 33 (citation omitted) (internal quotation marks omitted). Plaintiffs have failed to provide, and the Court has been unable to find, any cases with similar facts in which a court found the defendant liable for libel.

Thus, inasmuch as Plaintiffs have been unable to establish any malice on Defendants' behalf, the Court concludes Defendants are entitled, as a matter of law, to the affirmative defense of qualified privilege as to their December 2, 2020, and March 12, 2021, publications. As such, it is appropriate for the Court to grant Defendants' motion for summary judgment as to Plaintiffs' defamation claim.

The Court will decline from addressing the remainder of parties's arguments because the conclusions above are dispositive. *See Karsten v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

### V.    CONCLUSION

Consequently, based on the foregoing discussion and analysis, it is the judgment of the Court Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

Signed this 6th day of March, 2024, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE